IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD EDWARD SMITH,<br><br>    Petitioner,<br><br>  v.<br><br>CHARLES PLUMMER, Sheriff,<br>Alameda County Jail,<br><br>    Respondent.<br>_____ / | No. C-06-1637 MMC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Before the Court is petitioner Ronald Edward Smith's petition for a writ of habeas corpus. Respondent Charles Plummer has filed an answer and supporting documents, and petitioner has filed a traverse. Having considered the papers filed in support of and in opposition to the petition, the Court rules as follows.

**BACKGROUND**

On April 30, 1997, in Alameda County Superior Court, petitioner, pursuant to a negotiated plea agreement, pled guilty to two counts of child abduction, see Cal. Pen. Code § 278, and admitted two prior prison terms, see Cal. Pen. Code § 667.5; that same date, petitioner was sentenced to state prison for a term of twelve years (see Ans. Ex. A). Petitioner did not seek direct or collateral review of his conviction or sentence.

Near the end of petitioner's prison term, the California Department of Mental Health determined petitioner met the criteria of a Sexually Violent Predator ("SVP"). See Cal. Welf. & Inst. Code § 6601; (Ans. Ex. C at 13-34). On December 8, 2004, at the request of the Department of Mental Health, the Alameda County District Attorney filed a civil petition to commit petitioner as an SVP pursuant to California's Sexually Violent Predators Act ("SVPA"). See Cal. Welf. & Inst. Code §§ 6600 et seq.; (Ans. Ex. B).

Petitioner thereafter moved to dismiss the SVPA petition, on the ground said filing constituted a breach of his 1997 plea agreement. (See Pet. Ex. A; Ans. Ex. D; see also id. Ex. C at 43-59.) On April 8, 2005, the superior court denied petitioner's motion, found there was probable cause to believe petitioner was an SVP, and ordered petitioner detained pending trial on the petition. (Id. at 59-70.)

Petitioner subsequently filed a petition for a writ of habeas corpus in the Alameda County Superior Court, the California Court of Appeal, and the California Supreme Court. (See Ans. Exs. E-G.) All of petitioner's state habeas petitions were denied (see id.) and the last of such denials was filed on February 8, 2006 (see id. Ex. F).

On March 1, 2006, petitioner filed the instant petition, alleging therein that his constitutional right to due process has been violated by the institution and prosecution of the above-described civil commitment proceedings. He seeks issuance of a writ of habeas corpus precluding the further conduct of such proceedings.

**LEGAL STANDARD**

A federal writ of habeas corpus extends to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In this instance, the petition is properly brought under 28 U.S.C. § 2241, which statute "provides generally for the granting of writs of habeas corpus by federal courts, implementing 'the general grant of habeas authority provided by the Constitution.'" See Frantz v. Hazey, 533 F.3d 724, 736 (9th Cir. 2008)(en banc) (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004)). The petition, contrary to respondent's argument, does not come within 28 U.S.C. § 2254, because petitioner, as a pretrial detainee, is not being held "pursuant to the

judgment of a State court." See 28 U.S.C. § 2254; see also McNeely v. Blanas, 336 F.3d 822, 824 n.1 (9th Cir. 2003). Consequently, this Court reviews petitioner's claims de novo. See id.

## DISCUSSION

### A. Abstention

At the outset, respondent argues that under Younger v. Harris, 401 U.S. 37 (1971), the Court should abstain from deciding the petition.

Under principles of equity, comity and federalism, a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief absent "extraordinary circumstances." See Younger, 401 U.S. at 43-46. Consequently, absent such circumstances, the Court must abstain from exercising jurisdiction if four requirements are met:

> (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that Younger disapproves.

San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008). Younger abstention applies to state criminal, civil, and administrative proceedings. See id. (citing Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 (1986)).

Here, petitioner is in custody awaiting the completion of state civil commitment proceedings that will determine whether he will be committed under the SVPA to the custody of the Department of Mental Health for a two-year period of treatment and confinement. See Cal. Welf. & Inst. Code § 6604. Applying the above four requirements, the Court finds Younger abstention is applicable pending completion of those proceedings.

First, as noted, the subject SVPA proceedings are ongoing.

Second, such proceedings implicate important state interests. See Hubbart v. Superior Court, 19 Cal. 4th 1138, 1153 n.20 (Cal. 1999) (noting SVPA is "narrowly focused

on a select group of violent criminal offenders," and proceedings thereunder serve "compelling" state interests, specifically, "protection of the public and mental health treatment"); see also Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (noting, for purposes of Younger analysis, "[t]he importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature").

Third, petitioner is not barred from litigating the instant federal constitutional issues in the state proceeding, and, indeed, has done so. (See Ans. Exs. C, E-G.)

Fourth, the instant petition, if granted, would enjoin the SVPA proceeding, as petitioner seeks by said petition to "compel the state to dismiss the proceeding now pending against [p]etitioner." (See Traverse at 20.)

In light of the above, this Court, absent "very special circumstances" involving irreparable injury" of a nature that is "both great and immediate," see Younger, 401 U.S. at 45-46, must abstain from deciding the instant petition pending completion of the SVPA proceedings. The Court next considers whether the instant petition presents such exceptional circumstances.

At the outset, the Court notes that the "cost, anxiety and inconvenience of having to defend against a single criminal prosecution do not constitute "irreparable injury" under Younger, see id. at 46, and petitioner cites no authority suggesting the civil proceedings at issue herein should be treated any differently in that regard.

Next, petitioner's citation to double jeopardy cases, see, e.g., Mannes v. Gillespie, 967 F.2d 1310 (9th Cir. 1992), is unavailing. Those cases recognize that "full vindication of the right [not to be twice put in jeopardy for the same offense] necessarily requires intervention before trial." See id. at 1312. In particular, "[b]ecause the accused already has been subjected to the ordeal of trial, overturning such a conviction is not a complete remedy for the double jeopardy violation." See id. at 1313. No similar circumstance is presented by the facts alleged in the instant petition. See Kansas v. Hendricks, 521 U.S. 346, 369 (1997) (rejecting double jeopardy challenge to civil commitment proceedings

under Kansas SVPA); Hubbart, 19 Cal. 4th at 1171-72 (describing California's SVPA proceedings as "similar to" proceedings under Kansas SVPA).

Lastly, petitioner's reliance on Gerstein v. Pugh, 420 U.S. 103 (1975), Braden v. 30th Judicial Circuit Court, 410 U.S. 484 (1973), and Fort Belknap Indian Community v. Mazurek, 43 F.3d 428 (9th Cir. 1994), is unavailing, as each such case is readily distinguishable on its facts.

In Gerstein, the Supreme Court held Younger abstention inapplicable to a petition challenging the legality of pretrial detention without a judicial hearing. See Gerstein, 420 U.S. at 108 n.9. Under such circumstances, the Supreme Court found Younger abstention inapplicable, because "the injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention," an issue "that could not be raised in defense of the criminal prosecution." Id.

Similarly, in Braden, the petitioner, unlike petitioner herein, did not seek to enjoin a state proceeding, but, in that case, to enforce the state's obligation to provide him with a speedy trial. See Braden, 410 U.S. at 489-90. Under such circumstances, the Supreme Court approved the district court's determination to adjudicate the merits of the petition. See id. at 493. In so ruling, however, the Supreme Court "emphasize[d] that nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court." See id.

Fort Belknap likewise is of no assistance to petitioner. There, the Ninth Circuit found abstention improper because no important state interest had been demonstrated. See Fort Belknap, 43 F.3d at 431 (holding question of "whether the state has jurisdiction to prosecute Indians who violate Montana liquor law on an Indian reservation" is "one of federal jurisdiction").

In sum, the criteria for abstention having been established, and no exception having been demonstrated,ced, this Court is required to abstain from exercising jurisdiction over the instant petition.

**B. Petitioner's Claims**

Assuming, arguendo, the Court is not required to abstain, the petition fairs no better.

Petitioner's due process claim, as noted, is that the state's initiation and conduct of the civil SVPA proceedings is contrary to the terms of the plea agreement petitioner entered in his criminal case. In particular, according to petitioner, the prosecutor acknowledged, on the record at the time petitioner entered his plea, that "nothing further would be filed against [petitioner] in the future." (See Pet. at 6a; see also Ans. at 10).[1]

Under Santobello v. New York, 404 U.S. 257 (1971), petitioner has a due process right to enforce the terms of his plea agreement. See id. at 261-62; see also Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003) ("[The defendant's] due process rights conferred by the federal constitution allow [him] to enforce the terms of the plea agreement.") As set forth below, however, the Court finds the initiation and conduct of the subject SVPA proceedings is not in violation of petitioner's plea agreement.[2]

"[T]he construction and interpretation of state court plea agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.'" Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006) (en banc) (quoting Ricketts v. Adamson, 483 U.S. 1, 6 n.3 (1987)). "In California, '[a]ll contracts, whether public or private, are to be interpreted by the same rules.'" See id. (quoting Cal.

---

[1] Petitioner also claims the absence of a transcript of the plea colloquy constitutes a due process violation. Given that no direct appeal was filed, no transcript of the plea and sentencing hearing was prepared initially, and, at this time, one cannot be created. (See Ans. Ex. A; see also Ans. at 4 (stating court reporter "has since passed away").) Petitioner cites no authority holding the absence of a transcript under such circumstances will support a due process claim. In any event, any such claim necessarily fails herein, as the Court, for purposes of the instant analysis, accepts petitioner's account of what was said at those proceedings, and, consequently, petitioner has suffered no prejudice by reason of the unavailability of a transcript thereof. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (holding habeas petitioners not entitled to relief absent actual prejudice).

[2] To the extent petitioner asserts a separate due process claim based on "California's own rules and procedures regarding the enforcement of plea bargains" (see Traverse at 19:22-24), the Court finds the analysis of such claim indistinguishable from that applicable to petitioner's claim "asserting Santobello error" (see id. at 20:13-15). Even assuming, arguendo, a legally cognizable distinction between such claims, petitioner has identified herein no California rule or procedure upon which any such separate claim would be based.

1  Civ. Code § 1635). Under California law, "[a] negotiated plea agreement is a form of
2  contract[.]" People v Shelton, 37 Cal. 4th 759, 767, (2006). As such, "it is interpreted
3  according to general contract principles," id., and "according to the same rules as other
4  contracts," see People v. Toscano, 124 Cal. App. 4th 340, 344 (2004).

California law requires a three-step approach to interpreting contracts. See Buckley, 441 F. 3d at 696. First, a court must look to the plain meaning of the agreement's language. Id. (citing Cal. Civ. Code §§ 1638, 1644). Next, if the language in the contract is ambiguous, the court attempts to resolve that ambiguity by looking to "the 'objectively reasonable' expectation of the promisee." See id. at 695 (quoting Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1265 (1992)); Cal. Civ. Code § 1649. Finally, "[i]f after this second inquiry the ambiguity remains, 'the language of [the] contract should be interpreted most strongly against the party who caused the uncertainty to exist.'" Buckley, 441 F. 3d at 695 (quoting Cal. Civ. Code § 1654).

The plea agreement at issue herein consists of a written waiver form signed by petitioner (Ans. Ex. A ("Waiver on Plea of Guilty/No Contest")), and oral promises made in court by the prosecutor at the time petitioner changed his plea. The waiver form includes, inter alia, the following admonition, initialed by petitioner: "My attorney has explained to me his understanding of the recommendations of the District Attorney but the actual promises will be explained to me in open court with the judge present." (See id. ¶ 8.) In support of his petition, petitioner has identified nothing in either the waiver form itself, or in his conversations with his defense counsel, bearing on the instant claim. Accordingly, the Court turns to the statements made by the prosecutor in open court.

### 1. Plain Meaning

Under California law, if the language of a contract is "clear and explicit," the language of the contract governs its interpretation, unless a literal reading thereof "involve[s] an absurdity." Cal. Civ. Code § 1638. Here, when the prosecutor's promise that "nothing further will be filed against [petitioner] in the future" is interpreted in its "ordinary and popular sense," see Cal Civ. Code § 1644 (providing words of contract "are to be

7

1  understood in their ordinary and popular sense"), a patent absurdity results, as such
2  promise, so construed, would allow petitioner to commit all manner of crimes in the future
3  with impunity.  Consequently, the statement cannot reasonably be given a literal
4  interpretation, i.e., to provide petitioner a free pass to commit criminal offenses in the
5  future.  Accordingly, the Court deems the statement ambiguous and will proceed to the
6  second step of the analytical model identified in Buckley.  See Buckley, 441 F. 3d at 695.

                    2.   Objectively Reasonable Interpretation

8         "If the language in [a] contract is ambiguous, 'it must be interpreted in the sense in
9  which the promisor believed, at the time of making it, that the promisee understood it.'"
10  Buckley, 441 F. 3d at 695 (quoting Cal. Civ. Code § 1649).  "The inquiry considers not the
11  subjective belief of the promisor but, rather, the 'objectively reasonable' expectation of the
12  promisee."  Buckley, 441 F. 3d at 695 (quoting Bank of the West, 2 Cal. 4th at 1265 (1992);
13  see Badie v. Bank of Am., 67 Cal. App. 4th 779, 802 n.9 (1998) ("Although the intent of the
14  parties determines the meaning of the contract, the relevant intent is objective–that is, the
15  objective intent as evidenced by the words of the instrument, not a party's subjective
16  intent.") (internal quotation and citation omitted).  Such "inquiry considers the disputed or
17  ambiguous language in the context of the contract as a whole and of the relevant
18  surrounding circumstances."  Buckley, 441 F. 3d at 698 (citing Nissel v. Certain
19  Underwriters at Lloyd's of London, 62 Cal. App.4th 1103, 1111-12 (1998)).

20         Here, taken in context, the prosecutor's statement is subject to only one reasonable
21  interpretation:  that no further criminal charges would be filed against petitioner based on
22  conduct known to the prosecution at that time.  In particular, the prosecution, at the time
23  petitioner entered his plea, was aware of the charged conduct as well as additional conduct
24  involving not only the two victims alleged but also a third child, and the possibility existed
25  that further criminal charges based thereon would be filed.  (See Ans. Ex. C at 51.)

26        By contrast, neither the prosecutor nor petitioner was aware at that time of any facts
27  supporting an SVPA petition.  Rather, the determination to seek such a petition was not
28  made by the Department of Mental Health until years later.  (See Ans. Ex C at 13-34); Cal.

Welf. & Inst. Code § 6601.[3] Indeed, the SVPA petition was based, as required by California law, on an assessment of petitioner's mental state at the time the SVPA petition was filed, not at the time of petitioner's conviction in 1997. See id. Moreover, the petition was not predicated on the crimes for which petitioner was convicted in 1997, nor could it have been. See id. § 6600(a), (b) (defining "sexually violent offense" for purposes of SVPA petition; listing qualifying convictions as those under Penal Code §§ 261, 262, 264.1, 286, 288, 288a and 289). Rather, the SVPA petition was based on petitioner's 1965, 1977, and 1983 convictions under Penal Code § 288(a) (lewd and lascivious act upon minor) and his 1982 conviction under Penal Code 288(b) (forcible lewd and lascivious act upon minor). (See Ans. Ex. B Swisher Decl. at 2.)

Under such circumstances, petitioner's objectively reasonable expectation could not have encompassed a promise by the prosecutor that precluded the filing of the subject civil proceeding under the SVPA, let alone a promise purporting to bind the Department of Mental Health in that regard. Rather, as discussed above, the objectively reasonable expectation of a defendant in petitioner's position was that no further charges would be instituted or pursued based on petitioner's conduct involving either of the two victims alleged or the third child then under investigation. It is undisputed that no such charges were filed.

In sum, the prosecutor kept his part of the bargain, and, accordingly, petitioner's due process rights were not violated.

---

[3] Section 6601 mandates a detailed series of procedures for the screening and evaluation of soon-to-be-released prisoners, to determine if any such prisoner "may be a sexually violent predator." See Cal. Welf. & Inst. Code § 6601(a)-(c). The statute requires, inter alia, the use by the Department of Mental Health of a "standardized assessment protocol," including "evaluat[ion] by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist," see id. § 6601(c), (d). "If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health shall forward a request for a petition for commitment . . . to the county[.]" Id. § 6601(d). "If the county's designated counsel concurs with the recommendation, a petition for commitment shall be filed[.]" Id. § 6601(i).

**CONCLUSION**

For the reasons stated above, the above-titled petition is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: April 30, 2010

_____
MAXINE M. CHESNEY
United States District Judge